BRISCOE, Chief Judge,
dissenting.
In this case of first impression, the majority misreads 20 U.S.C. § 1415(Z) to require a litigant, such as plaintiff A.F., to forgo any resolution of her claim under the Individuals with Disabilities Education Act (IDEA) in order to preserve the ability to seek remedies in federal court under acts other than the IDEA. More specifically, a claimant under the IDEA must now, in order to later be able to file suit in federal court under other related statutes, refuse to settle her IDEA claim during the preliminary meeting required by 20 U.S.C. § 1415(f)(1)(B) or the mediation process described in 20 U.S.C. § 1415(e), and must also lose in both the due process hearing outlined in 20 U.S.C. § 1415(f)(1)(A) and the subsequent administrative appeal outlined in 20 U.S.C. § 1415(g). This was clearly not the intent of Congress and, ironically enough, harms the interests of the children that IDEA was intended to protect. As a result, I respectfully dissent.
I

Factual background

The following facts are derived from AF.’s complaint. A.F., born on June 2, 1996, suffers from a learning disorder that she identifies as dyslexia. From the time she was old enough to attend school until the summer of 2012, A.F. attended the Española Public Schools (EPS). When she was in elementary school, A.F. participated in EPS’s Title I program (focused on educationally at-risk students), but nevertheless made only minimal progress in reading and spelling. In middle school, A.F. continued to struggle academically, particularly with language arts, math, and .life science. Indeed, A.F. failed half of her classes during both her seventh and eighth grade years.
At the beginning of the 2010-2011 school year, A.F., though old enough to attend high school, was retained by EPS in the eighth grade and directed to attend middle school. At the end of the first semester of the 2010-2011 school year, EPS reconsidered its decision, despite A.F. having failed two courses during the fall semester, and directed her to attend Española Valley High School (EVHS) as a ninth-grader during the spring semester. When A.F. began attending EVHS, she and her mother were instructed by EPS that she would attend a segregated credit recovery class during the morning and would then need to be picked up at noon each day. When A.F.’s mother objected, EPS agreed to allow A.F. to stay in the EVHS library until she could ride the bus home at the end of the school day. During the time that A.F. spent in the EVHS library, she was not provided with instruction or attention from school staff. At some point during the spring semester of 2011, EPS changed A.F.’s afternoon schedule and placed her in additional classes. A.F., *1252 however, ultimately failed all but one of those classes.
A.F. continued to attend EVHS during the 2011-2012 school year. Although A.F.’s mother asked EPS to evaluate and help A.F., EPS advised her that it could be between three and six months before A.F. would be evaluated. During the fall semester of 2011, A.F. failed four of six classes and received Ds in the other two classes.
In the summer of 2012, A.F., due to the difficulties she encountered with EPS, transferred to a private school named Victory Faith Christian Academy.

A.F.’s due process complaint

On February 10, 2012, while she was still attending EVHS, A.F. filed with the New Mexico Public Education Department (NMPED) a special education due process hearing complaint. The complaint alleged, in pertinent part, that EPS “ha[d] not evaluated or identified [A.F.] under either the IDEA or Section 504 of the Rehabilitation Act.” App. at 73. The complaint further alleged that EPS violated the IDEA by failing to “timely and comprehensively evaluate [A.F.] in all areas of suspected disability and need from August 2009 to the present,” “failing to identify [A.F.] as eligible for special education and related services under the IDEA from August 2009 to the present,” “failing to develop and implement an IEP [ (individualized education program) ] for [A.F.] from August 2009 to the present,” and “failing to provide [AF.’s mother] with information required in connection with her evaluation requests, including prior written notice and IDEA procedural safeguards, since the 2008 to 2009 school year.” Id. at 74. The complaint sought “prospective relief’ in the form of “an order requiring the [EPS]” to (1) “identify [A.F.] as a student eligible for special education,” (2) “develop an interim IEP for [A.F.],” (3) “obtain comprehensive evaluation(s) of [A.F.] ... in all areas of need including academic development, emotional functioning and attentional issues,” (4) “retain an independent Facilitator to facilitate development of an IEP for [A.F.] and to include independent evaluators and [A.F.’s] attorney in the FIEP [(final individualized education program) ] at [EPS] expense,” and (5) provide A.F. with “compensatory education and related services to address areas of need identified by the evaluations and credit recovery.” Id.
On May 16, 2012, A.F. and EPS resolved the due process hearing complaint by entering into a written mediation agreement. Contrary to the majority’s interpretation of the mediation agreement, it purported to “resolve all claims under the [IDEA].” Id. at 76. As part of the mediation agreement, EPS agreed to “identify [A.F.] as a child with Specific Learning Disabilities in the areas of reading comprehension, written expression, and math calculation,” id., and “to make [a] compensatory education program ... available to [A.F.] for so long as [she] enrolled in Victory Faith and resided] within the geographical boundaries of the [EPS],” id. at 77. EPS also agreed to pay a portion of the costs associated with A.F. attending Victory Faith, and to provide her with transportation to and from Victory Faith.
On May 18, 2012, two days after the parties entered in the mediation agree-' ment, A.F. filed a motion with the NMPED to dismiss her due process hearing complaint with prejudice. The motion was granted by the NMPED that same day.

The federal court proceedings

On August 23, 2012, A.F., by and through her parent and next friend, Christine B., filed suit against defendants in the First Judicial District Court for the Coun *1253 ty of Santa Fe, New Mexico, asserting “causes of action for (1) violation of federal disability discrimination laws, pursuant to Section 504 of the Rehabilitation Act (‘Section 504’) and the Americans with Disabilities Act (‘ADA’), as actionable pursuant to such Acts and pursuant to 42 U.S.C. §§ 1983 and 1988, and (2) violation of her Fourteenth Amendment rights to procedural Due Process, as actionable pursuant to 42 U.S.C. §§ 1983 and 1988.” Id. at 21.
A.F.’s combined Section 504 and ADA claim (the first cause of action in her complaint) alleged that EPS discriminated against her on the basis of her learning disability and was deliberately indifferent to federal disability laws requiring it to take her disability into account in the delivery of her education, “as evidenced by [its] failure to accommodate her need for identification, evaluation, and assistance as a student with learning disabilities affecting major areas of her life.” Id. at 31. The claim further alleged that, “[a]s a direct and proximate result of [EPS’s] violations of federal disability laws, A.F. suffered loss of educational opportunities, emotional distress and mental anguish, damage to her self-esteem, and potentially irremediable developmental delays, entitling A.F. to compensatory damages in an amount to be proven at trial.” Id.
A.F.’s § 1983 due process claim (the second cause of action in her complaint) alleged that A.F. had “a protected liberty and property interest in her public school education and the wide array of benefits and services that should have been made available to her, including an interest in identification, evaluation, and assistance as a child with learning disabilities.” Id. at 32. The claim in turn alleged that EPS personnel “personally participated as [EPS] policymakers in the decisions to deny [her] some or all of these benefits and services and caused the violations to occur.” Id. The claim alleged several alternative theories of liability, including “supervisory liability,” id., “failure of [EPS] to train [its] employees,” id., and EPS’s “establish[ment] [of] a de facto course of conduct of denying disabled students the rights and liberty and property interests to which they were entitled,” id. at 33. The claim further alleged that EPS’s “actions and deliberate indifference denied A.F. the procedural protections of federal and state law by denying her a public education and special education on an arbitrary and capricious basis,” and that “[n]o post-deprivation hearing was adequate to remedy these violations of procedural Due Process.” Id. at 34. Lastly, the claim alleged that, “[a]s a direct and proximate result of [EPS’s] conduct, A.F. suffered emotional distress and mental anguish, damage to her self-esteem, and potentially irremediable developmental delays, entitling A.F. to compensatory damages in an amount to be proven at trial.” Id. at 35.
On November 13, 2012, defendants removed the complaint to federal district court, asserting jurisdiction based on the existence of a federal question under 28 U.S.C. § 1331. Id. at 16-18.
On April 8, 2013, defendants moved for judgment on the pleadings, arguing, in pertinent part, that A.F. had failed to exhaust her administrative remedies as required by 20 U.S.C. § 1415(£). Attached to defendants’ motion were copies of the due process hearing complaint that A.F. filed with the NMPED, the mediation agreement between A.F. and EPS settling that complaint, and A.F.’s motion to dismiss her due process hearing complaint' with prejudice.
On December 6, 2013, the district court issued a memorandum opinion and order granting defendants’ motion for judgment on the pleadings. In doing so, the district court first concluded that “[a]ll of [A.F.]’s *1254 claims require[d] exhaustion, because the relief she s[ought] [wa]s also available under the IDEA.” Id. at 247. “The entirety of [A.F.]’s Complaint,” the district court noted, “centered] on the dispute over [EPS’s] efforts to accommodate A.F.’s educational needs,” and her “discrimination and Section 1983 claims [we]re part and parcel of her educationally based grievance.” Id. at 249. The district court in turn “determine[d] that the Mediation Agreement ... d[id] not satisfy [A.F.]’s obligation to exhaust her administrative remedies under the IDEA.” Id. More specifically, the district court concluded that “the IDEA’S exhaustion requirement .... is not satisfied when parties enter into a mediated settlement agreement,” and that, instead, “there must be, at the very least, a state-level impartial due process hearing before the aggrieved party can file a civil action in federal court.” Id. at 251. Although the district court acknowledged that “[e]xhaustion is not required where (1) it would be futile, (2) it would fail to provide adequate relief, or (3) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law,” it noted that A.F. had failed to “address whether any of the[se] ... exceptions to • the exhaustion requirement applied] to [her] case.” Id. (internal quotation marks omitted).
On January 2, 2014, A.F. filed a motion to alter or amend the judgment. Id. at 254. In that motion, A.F. conceded that she was required under the IDEA to exhaust her administrative remedies, but she argued that the dismissal of her due process hearing complaint, pursuant to the mediation agreement, constituted exhaustion. A.F. also argued “that the mediated settlement of [her] educational relief claims ma[d]e[ ] further exhaustion of administrative remedies futile.” Id. at 266.
On July 8, 2014, the district court issued a memorandum opinion and order denying A.F.’s motion to alter or amend judgment. The district court reaffirmed its conclusion that “a mediated settlement agreement does not satisfy the exhaustion requirement of 1415(i).” Id. at 362. The district court also rejected A.F.’s assertion that exhaustion would be futile.
II

Standard of review

“We review a district court’s grant of a motion for judgment on the pleadings de novo, using the same standard that applies to a Rule 12(b)(6) motion.” Park Univ. Enters. v. Am. Cas. Co. of Reading, PA, 442 F.3d 1239, 1244 (10th Cir.2006).

What does § U15(l) require in terms of exhaustion?

IDEA’S administrative exhaustion provision provides as follows:
Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities! except that before the filing of a civil action under such laws seeking relief that is also available under this subchap-ter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchap-ter.
20 U.S.C. § 1415(i) (emphasis added).
“Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.” Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d *1255 808 (1997). “Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.” Id. (internal quotation marks omitted). “The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Id. at 341, 117 S.Ct. 843.
The majority in this case concludes that the above-highlighted language of § 1415(i) unambiguously requires a litigant, such as A.F., to “qualify under subsection [1415](i) as a party ‘aggrieved by the findings and decision’ of administrative trial and appellate authorities.” Maj. Op. at 1248. In other words, the majority interprets the highlighted language as unambiguously requiring a litigant, in order to proceed in federal court under a statute other than IDEA, to forgo resolution of her claim by way of a preliminary meeting or mediation and to lose at both the administrative trial and appellate levels.
I submit, however, that the highlighted language is “ ‘capable of being understood’ ” in another, and indeed more reasonable, “ “way[ ].’ ” Chickasaw Nation v. United States, 534 U.S. 84, 90, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (quoting Webster’s Ninth New Collegiate Dictionary 77 (1985)). In order to explain this alternative interpretation, it is necessary to review how an IDEA complaint is filed and resolved, including a close examination of the procedures that Congress made available under §§ 1415(f) and (g).
Section 1415(a) requires “[a]ny State educational agency, State agency, or local educational agency that receives assistance under this subchapter” to “establish and maintain” a variety of procedures “to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies.” 20 U.S.C. § 1415(a). Of relevance here is “[a]n opportunity ... to present a complaint.” Id. § 1415(b)(6).
The “opportunity ... to present a complaint” referred to in § 1415(b)(6) is fleshed out in greater detail in .§§ 1415(f) and (g). To begin with, the process anticipates that “parents” may file a complaint and in turn be afforded “an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.” Id. § 1415(f)(1)(A). Prior to a due process hearing being conducted, however, and within fifteen days of the receipt of the complaint, “the local educational agency” must “convene a [preliminary] meeting with the parent's and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint.” Id. § 1415(f)(1)(B)®. The intended purpose of this “preliminary meeting” is to allow the “the parents of the child [to] discuss their complaint, and the facts that form the basis of the complaint,” and to afford “the local educational agency ... the opportunity to resolve the complaint.” Id.
The only exception to this preliminary meeting requirement is if “the parents and the local educational agency agree in writing to waive such meeting, or agree to use the mediation process described in subsection (e).” Id. The opportunity for mediation, which is detailed in § 1415(e), is intended “to allow parties to disputes involving any matter ... to resolve such disputes through a mediation process.” Id. § 1415(e). Notably, this process anticipates that “eomplaint[s]” may be “resolve®]” through the mediation process by way of “a legally binding [written] agreement.” Id. § 1415(e)(2)(F).
*1256 “If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint” (by way of the preliminary meeting or mediation), “the due process hearing may occur.” Id. § 1415(f)(l)(B)(ii). The outcome of such a hearing is “a decision made by a hearing officer ... on substantive grounds based on a determination of whether the child received a free appropriate public education.” Id. § 1415(f)(3)(E).
Subsection (g) affords, in certain circumstances, a right of administrative appeal. Specifically, “[i]f the hearing required by subsection (f) is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decisions to the State educational agency.” Id. § 1415(g)(1). “The State educational agency,” in turn, is required to “conduct an impartial review of the findings and decision appealed” and “make an independent decision upon completion of such review.” Id. § 1415(g)(2).
With this statutory framework in mind, I now return to the language of § 1415(Z) and submit that it can reasonably, and indeed should, be interpreted as merely requiring a claimant to make full use of the procedures outlined in §§ 1415(f) and (g) to attempt to resolve her IDEA claim. Under this interpretation, a mediated resolution of an IDEA claim would be considered sufficient to constitute exhaustion for purposes of § 1415(Z). That is not only because the statutory framework anticipates, and in fact encourages, resolution of IDEA claims by way of mediation, but also because a mediated resolution leaves nothing to be decided at a due process hearing or in an administrative appeal.
The interpretation of § 1415(Z) adopted by the majority is, in my view, inconsistent with the overall statutory framework developed by Congress., Indeed, why would Congress, after creating a framework that quite clearly encourages resolution of IDEA claims by various means, force a claimant to avoid resolution of her claim by mediation or preliminary meeting and lose at both the due process hearing and administrative appeal stages? Doing so would effectively render superfluous the mediation and preliminary meeting provisions of the statute. Further, precisely how could a claimant ensure a loss in both the due process hearing and the administrative appeal, yet later present a viable claim in federal court?
The majority’s interpretation is also, in my view, inconsistent with Congress’s more specific purpose in enacting § 1415(Z). Congress added this statutory language to clarify its disagreement with the majority opinion, and to effectively codify Justice Brennan’s dissenting opinion, in Smith v. Robinson, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). The key sentence in Justice Brennan’s dissent, for our purposes, is this:
The natural resolution of the conflict between the EHA [the predecessor to the IDEA], on the one hand, and §§ 504 and 1983, on the other, is to require the plaintiff with a claim covered by the EHA to pursue relief through the administrative channels established by that Act before seeking redress in the courts under § 504 or § 1983.
468 U.S. at 1024, 104 S.Ct. 3457. Nothing in this statement suggests that a plaintiff must forgo mediation and unsuccessfully pursue relief through the statute’s administrative channels before proceeding to federal court on his or her other related claims; Consequently, it makes little sense to say that Congress intended the opposite result in enacting § 1415(Z).
Finally, the majority’s interpretation is inconsistent with the very purpose of IDEA. It forces a claimant to choose be *1257 tween mediating a resolution to her IDEA claim (even if the local educational agency were willing to admit and correct the alleged errors) and thereby obtaining some or all of the relief sought under IDEA (in this case, for example, the creation of a compensatory education program, the payment of costs associated with attending another school, and transportation to and from that school), or forgoing any relief at all and waiting (while the child ages and potentially continues to receive something other than the requisite “free appropriate public education”) in hopes of later filing suit and obtaining relief under both IDEA and other statutes. That, I again submit, could not have been the intent of Congress in adopting § 1415(i).

The other rationales offered by the district court

The district court in this case purported to “adopt[] the First Circuit’s interpretation of the IDEA’S exhaustion requirement” outlined in Weber v. Cranston Sch. Comm., 212 F.3d 41 (1st Cir.2000). App. at 251. According to the district court, in that case “the First Circuit addressed the issue of what constitutes exhaustion under the IDEA and found that mediation is insufficient.” Id. at 250 (citing 212 F.3d at 53). A review of Weber, however, indicates that the First Circuit’s holding was not that broad. The parent/plaintiff in Weber argued that she complied with § 1415(£)’s exhaustion requirement “through the numerous administrative complaints that she filed” prior to initiating her civil lawsuit. 212 F.3d at 53. In rejecting this argument, the First Circuit stated as follows:
Although Weber filed three CRP complaints with the Rhode Island Department of Elementary and Secondary Education, two complaints with the Office of Equity and Access, and participated in a mediation on the issue of declassification, she never initiated the due process hearing described in IDEA. IDEA’S mandate is explicit: plaintiffs must exhaust IDEA’S impartial due process hearing procedures in order to bring a civil action under subchapter II of IDEA or any “such law[ ] seeking relief that is also available” under subchapter II of IDEA. 20 U.S.C. § 1415(Z).
Id. Thus, although the plaintiff/parent in Weber “participated in a mediation” on a single issue, there is no indication that the mediation was successful, i.e., that she actually resolved that issue (or any of the administrative complaints) by way of a written . mediation agreement. Consequently,, the Weber decision did not address the question at issue in this case, i.e., whether the resolution of a due process hearing complaint by way of a written mediation agreement is sufficient to constitute exhaustion of the procedures outlined in subsections (f) and (g).
The district court also asserted that its “determination that a settlement does not meet the exhaustion requirements [wa]s supported by the policy rationales requiring exhaustion.” App. at 251. These policy rationales, the district court asserted, include “(1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.” Id. at 251-52 (quoting Ass’n for Cmty. Living v. Romer, 992 F.2d 1040, 1044 (10th Cir.1993)). And, according to the district court, “allowing the settlement in this case to constitute exhaustion would permit plaintiffs to proceed with their claims without developing a factual record, allowing the educational system to exercise its expertise in resolving this conflict, or *1258 providing the parties a Ml opportunity to avoid excessive litigation.” Id., at 252.
The district court’s analysis was wrong. To be sure, the use of a written mediation agreement eliminates the need -for a due process hearing under § 1415(f), and, as a result, there is no administrative record that can be reviewed in any subsequent civil action. But resolving a due process complaint by mediation otherwise appears to serve the purposes of IDEA, and in an arguably more efficient fashion than by way of a due process hearing and subsequent administrative appeal. In particular, it allows the local educational agency that is the subject of the complaint to exercise its discretion and expertise in order to immediately correct any errors that may have occurred. Further, by preventing the need for a due process hearing and subsequent administrative appeal, it spares resources of local and State educational agencies. And, most importantly, it best serves the interests of the child at issue by promptly resolving the pending issues.
Ill
In sum, I conclude that resolution of a due process complaint by way of a written mediation agreement constitutes exhaustion for purposes of § 1415(0- Because the district court concluded otherwise, I would reverse the judgment of the district court and remand for further proceedings.